Samuel A. Spiegel, J.
This is a proceeding for a judgment directing the holding of a new Democratic primary election for the office of City Councilman from the 7th Councilmanic District, Bronx County. The petition is brought pursuant to subdivision 2 of section 330 of the Election Law on the ground that the primary election has been characterized by such irregularities or fraud as to render it impossible to determine who was rightfully nominated or elected.
The matter was referred to Hon. Eugene E. Murphy, Special Referee, on July 8,1969 pursuant to a stipulation on the record.
The Referee conducted numerous hearings and thereafter submitted his report, with his findings and recommendations thereon, to this court.
Of the 28,394 votes cast in this councilmanic race, petitioner Mario Merola received 14,118 and respondent Israel Rubin received 14,276, or a plurality of 158 votes over petitioner Merola. The Referee invalidated one paper ballot cast for petitioner, as not in accord with the requirements of sections 202 and 212 of the Election Law thus increasing respondent’s plurality to 159 votes.
Petitioner contends that 781 illegal votes were cast in said election, (adjusted to 778 on the hearings), based upon the following stipulated facts: (1) 233 voters whose enrollments *246 were blank, void, missing, Liberal or Conservative signed voter registration poll cards (“ buff cards ”) at the polls on Election Day (this figure excludes Conservative voters in those districts which had Conservative primaries) and (2) the total public counter figures on all machines in 139 of the 246 election districts exceeded the number of signatures on buff cards by 545. Petitioner further contends that the election was permeated with fraud and illegal, irregular practices, and presented four witnesses to establish these contentions.
The Referee found and reported in detail to this court that the proof presented by petitioner with respect to the claim of fraud fails to sustain his contention that a new election is required on the grounds of fraud alone.
To overcome the prima facie case of unexplained irregularities sufficient to warrant a new election, respondent presented evidence to establish the following premises: (1) that the votes allegedly cast by persons not entitled to vote in the Democratic primary either were never cast, or were so cast as not to affect the outcome of the race for councilman to petitioner’s prejudice. To this end, respondent presented 16 witnesses, all of whom signed buff cards and voted, albeit illegally, in the following manner: 13 voted in the Republican primary; 1 voted only in the Democratic Mayoral race and 2 voted for petitioner Merola. Five additional witnesses asserted that, although they signed buff cards, they never actually' voted. The testimony of two more voter witnesses was rejected by the Referee as incredible; (2) that the discrepancies between buff card signatures and public counter totals are accountable for reasons other than the casting of illegal votes, to wit, repairmen testing defective machines, policemen and inspectors testing or adjusting machines because of voter complaints of “jamming”, and voters exiting machines without casting any vote because of confusion or machine “ jamming ”, and then being permitted to re-enter and vote. To this end, respondent presented some twenty-five witnesses, inspectors and poll-watchers, who related the events which occurred at their polling places on Primary Day.
The Referee found and reported in detail to this court: that respondent’s proof failed to sustain his contention that a significant number of excess public counter figures can be explained away by circumstances negating the inference that these constitute irregular votes; that respondent’s proof failed to establish that any significant number of ineligible voters who signed buff cards actually did not vote; that testimony of a number *247 of witnesses called by respondent directly or indirectly supported petitioner’s contentions with respect to general irregularities and illegal voting; that, on the whole case, petitioner established his claim of “ general irregularity, illegalities, and ‘ grossly unbusinesslike conduct ’ ” in the conduct of this election; that respondent satisfactorily explained 33 (or possibly 43) irregularities, leaving 745 (or 735) net irregularities as compared to a winning plurality of 159; that respondent’s evidence did tend to support respondent’s contention that the net irregularities should be reduced by 20% and the resulting balance further reduced by 25%, to allow for the probability that irregular votes were cast in the same proportion as regular votes (i.e., 20% of the total vote in the E. D.’s comprising the 7th Councilmanic District was cast in the Republican primary, and there was a 25% “ fall-off ” in the Democratic vote between the Mayoral race and the councilmanic race); that, even allowing for these reductions, there remain 447 (or 441) irregularities a total approaching three times the winning plurality.
The court believes that respondent’s contention, that the “ probabilities ” are that any invalid votes here found were cast in the same proportions as reflected by the vote totals, is reasonable, at least in the absence of any showing that anyone caused or urged the parties casting the invalid votes to vote for respondent (see Matter of Straus v. Power, 22 N Y 2d 886). However, as the Referee found, even allowing for these proportionate reductions, the remaining unexplained irregular votes are of a sufficient number to establish the probability that 1 ‘ the results would be changed by a shift in, or invalidation of, the questioned votes, [so that] there should be a new election ” (Matter of Ippolito v. Power, 22 N Y 2d 594, 597-598, and cases cited therein).
Respondent here sought to emulate the respondent in Matter of Straus v. Power (22 N Y 2d 886) by explaining away apparent discrepancies, but only succeeded in raising more questions than satisfactory explanations. In the course of doing so, he enabled petitioner, through cross-examination, to give life to his cold statistics and substance to his inferential charges. Moreover, the instant case presents not only the question of mathematical probabilities, but an added circumstance — grossly irregular election procedures ■ — which combine with the mathematical probabilities to reinforce the conclusion that, notwithstanding the apparent result, it is impossible to determine which candidate was rightfully and properly elected (cf. Matter of Mack v. Cocuzzo, 22 N Y 2d 901).
*248 The court therefore concludes from the report of the Referee that there are sufficient gross irregularities to justify a new election based on —
(a) 545 more votes were reflected on the public counter than signatures recorded in the voter registration records as entitled to vote. Public counter excesses actually included illegal voting.
(b) 233 voters, not entitled to vote at all in this primary, signed records and all but 2, presumably were illegally given access to the voting machine.
(c) 20% of all votes cast in the primary were for Republicans. Only 75% of all votes cast for Mayor in the Democratic primary voted for Councilmen. This represents a 25% fail-off! Of the alleged 778 votes due to irregularities and illegalities, (subtracting therefrom those proven by respondent not to have affected the councilmanic race, amounting to 33 or 43) would still leave a balance of 745 or 735 irregular and illegal votes.
(d) The winning margin of respondent is 159 votes of a total of 28,393 votes east (Merola 14,117 — Rubin 14,276).
(e) Giving respondent full credit for a 20% Republican vote and a 25% fall-off vote for Councilman, from the irregular and illegal votes, there remain an unexplained 447 or 441 excess votes which were cast for Councilman, which are approximately three times the amount of the winning plurality.
(f) Together with the mathematical irregularities and illegalities which could possibly effect a different result in a new election, the election is characterized by irregularities and illegal procedures by the election inspectors, voters, and others, properly or improperly, at the polling places.
Accordingly, the findings and recommendation of the Referee are adopted and confirmed and the petition is granted. The respondent, the Board of Elections, is directed to hold a new primary election for the office of City Councilman in and for the 7th Councilmanic District, City of New York, County of Bronx, not later than the 23d day of September, 1969.